The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome. It's very nice to have you here today. We will hear argument first in No. 21-2047, Kerr v. Garland. Good morning, Your Honors. May it please the Court, Peter Alfredson and my co-counsel Eleni Becks, pro bono counsel for Petitioner O'Neill Lewis Kerr. In this case, the IJ and the Board committed two errors. First, they failed to properly aggregate all of Mr. Kerr's risks of torture in Jamaica as required under this Court's decision in Rodriguez-Arias. Second, they ignored and misconstrued critical evidence that Mr. Kerr is more likely than not to be tortured in Jamaica. We are asking this Court to remand the case back to the agency to correct these errors by properly considering all of Mr. Kerr's risks of torture. Turning first to aggregation, the IJ and the Board failed to combine all of Mr. Kerr's sources of risk of torture and consider them in the aggregate, which violated this Court's decision in Rodriguez-Arias. This error occurred in several ways. First, the IJ and the Board failed to consider that risks of torture must include both entities, meaning the actors who will torture, and reasons, meaning personal identity factors, as sources of risk that must be aggregated together. Counsel, can I ask you about that? So by my count, there are four possible sources of torture that have been raised and either four or five sort of personal characteristics. I am hard-pressed to figure out what it is you would have the IJ do. Like, do you have a chart with 20 boxes and then you put a number in each box? I mean, it seems unwieldy, and if you could help me understand exactly what it is you think the IJ needed to do to fully take account of the four sources and the four or five characteristics. Thank you, Your Honor. This analysis will actually be easier and more straightforward than any kind of mathematical analysis or boxes or charts. And it will be also more straightforward than what the IJ did in this case, which was parsing out all of the reasons separately from each entity. And the way instead that the IJ could do this analysis should be to consider cumulatively all of the reasons that a given entity would torture Mr. Carr. So look at all of the risks together from that entity. And after thinking about this and doing that analysis for each entity, to then consider the cumulative risks from all of the entities together. And this would be consistent with the approach that this Court already described in Rodriguez-Arias and the regulations under the agency's CAT regulations. And it would also be consistent with Rodriguez-Arias because even though that decision didn't explicitly differentiate between reasons and entities, that decision repeatedly cited to other decisions that required aggregation of risks of torture for multiple reasons. And these included Quijada Aguilar from the Ninth Circuit and matter of GA, which was a BIA case. Counsel, if the immigration judge in the Board had said, let's say in either opinion, that there was language to the effect that I've considered these characteristics and entities together cumulatively and I still find that there is not a reasonable likelihood of torture, would that satisfy you? Your Honor, I think there has to be meaningful consideration of the risks. And that's not what occurred in Mr. Carr's case. Counsel, I feel like you're about to go to whether the agency ignored or didn't properly examine some of the evidence. But on the aggregation point, I really want to get an answer on this because we held in Ibarra-Chavez, right, that we're not talking about a quantitative sort of numerical calculation. You don't have to do that. And here the IJ did say, I have considered everything in the aggregate and I still don't think there's a likelihood of torture. And you think that is insufficient. So what's in between? What is it that the IJ has to do that is not the math but is more than I've considered it in the aggregate? Thanks, Your Honor. I have two answers to that question. First, in terms of Ibarra-Chavez, the aggregation error in that case that was alleged was different from the errors that occurred here. So, for example, in this case, Mr. Carr has alleged that the agency failed to consider certain risks and did not do the aggregation analysis, whereas in Ibarra-Chavez, in that case, he only alleged that the IJ had conflated various risks. Additionally, in terms of Ibarra-Chavez saying that no methodology is required, we are not advocating a particular methodology. We're simply saying that the IJ has to consider and aggregate all sources of risk. So, counsel, then, are you saying that there has to be a substantive analysis of aggregate risk rather than simply a declarative statement that I have considered the aggregate risk and find that it does not exceed 50 percent? That's correct, Your Honor. Okay, so let's take one example, then. Let's take the example of Mr. Carr's sexuality. Tell us how the IJ failed with regard to that one aspect to incorporate that into a substantive analysis of aggregate risk. Yes, Your Honor. So the extent of the IJ's analysis on the risks Mr. Carr faces from the shower posse because of his bisexuality was a cursory statement that the shower posse may have a problem with his bisexuality. And this was not meaningful consideration of that risk. And it also ignored Mr. Carr's credible testimony as well as his expert, Dr. Blake, on this issue. Can I ask you a question? Because I read the IJ, I guess, slightly differently. I did read the sentence you're talking about, but I read the IJ's crediting that in the United States there was a risk from the gang based on sexual – doing what you are saying the IJ should do, sort of looking at the characteristics intertwined. There's the sexuality. There's the stealing from the gang. And when you add it all up, there is a risk from the gang in the United States. I thought the IJ's analysis on this point really hinged on the fact that whatever's going on in the United States, there's no evidentiary link to Jamaica, that this is a problem that originated in the United States. The threat is present in the United States. But then there's a whole page of analysis about why there's no evidence that this problem will replicate itself in Jamaica. Thank you, Your Honor. So Dr. Blake's report, in particular, spoke to this question. Because Jamaica is a country smaller than the size of Connecticut, there is serious homophobia there and a lot of violence in a way that – But that's not from the gang.  It is from the gang. And Dr. Blake spoke to that in his expert report about how Mr. Kerr would be a man marked for death as soon as he arrived in Jamaica, in large part because of the gang targeting him based on being bisexual and as having been a thief and an enemy of the gang. I mean, I think the IJ thought that was not right, that there was no actual evidence that the gang members that the petitioner had identified were also being deported to Jamaica. It had been 10 years since the last threats. I mean, whatever I might have found, had I been the IJ, it is hard to – at least I am finding it hard to say that the IJ didn't make a sort of reasoned decision on this point. Your Honor, the IJ also ignored and never discussed in her legal analysis the fact from Mr. Kerr's friend, Dr. Mara Hutchinson's sworn declaration that as recently as 2020, members of the Shower Posse knew that Mr. Kerr had been detained and was facing removal to Jamaica, and they knew his full name, and they were still asking about his whereabouts. Counsel, kind of on that same point, the Board addressed that and talked about what that evidence was and some of the parts you're talking about, but some of the drawbacks of it too. And it just feels like you're, you know, disagreeing, and I get that, with the analysis of the IJ or the conclusion of the IJ or the conclusion of the Board. But, you know, if the Board goes through and the IJ goes through it and just sees the evidence that you presented, you know, effectively, I'm not criticizing differently. I mean, it feels like we're just doing a redo of the evidence that was presented before the agency. I understand, Your Honor, and the Board did discuss that. However, that, I think, goes more to the issue of ignoring and misconstruing evidence, which is only one way that a legal or a factual error occurred here. And in terms of the aggregation, the fact that the IJ did not fully and meaningfully consider all sources of risk, including the reasons that the gang in particular would torture Mr. Kerr. Counsel, on what exactly the IJ had to say, I heard you tell Judge Keenan the problem, is this right, am I understanding your position right, that one sentence isn't enough, basically. You can't just go source and maybe characteristics, sort of bundle by bundle by bundle by bundle, and then say in one sentence, and same when I add them all up together. So what is the IJ supposed to say after that sentence? Well, I think that this gets to the other primary error here, which was that the IJ looked at each of these reasons in a piecemeal way. So the gang ‑‑ I just ‑‑ I am really struggling with this case. It seems to me that this is a difficult problem, because on the one hand, we did say in Ibarra, and this is probably right, it doesn't matter, we said it, you don't have to do a mathematical equation. That's not what we're asking for. But you wouldn't want this to turn into just sort of a formulaic box that you check. Oh, yeah, yeah, and then I added it together, and that was fine. And I am truly trying to figure out what is in between those two things. And if you could tell me what you think the IJ has to do, not an equation, but not just check a box, just what does the IJ have to do, that would be enormously helpful. Yes, Your Honor. So the gang is already aggregating the threats to Mr. Carr when they called him multiple times for years and threatened him, saying, batty man, you're a thief, you're dead. Mr. Kerr's risk increased because he has these multiple identities. So what we are asking the IJ to do is to simply apply the same standard that the gang is already doing and thinking about Mr. Kerr as a higher target because he is both a bisexual man and a thief and a perceived informant. They are not. Okay, Mr. Alferdson, I think we need to follow up, though, on Judge Harris's question. Ibarra-Chavez, it seems to me, takes it one step further than Rodriguez-Arias by saying the question is whether the cumulative probability of torture by all the entities or for all reasons exceeds 50%. So if you were the IJ, how would you address that question, let's say, with regard to the gang and the examples you gave of the fact that he had stolen in drug transactions and that he was bisexual? How would you address that under the direction of Ibarra-Chavez, the cumulative probability for all reasons? So under Ibarra-Chavez and Rodriguez-Arias, the proper analysis is to look at all of the reasons why each entity would torture Mr. Kerr, considering how those reasons would amplify and compound each other. In a holistic way, it doesn't require any kind of mathematical analysis or statistics or anything. It simply requires substantively engaging with those reasons and how they increase each other. And then after looking at all of the entities together, considering whether that is more likely than not. And that's simply what the regulations say and what Rodriguez-Arias and Ibarra-Chavez both said. Go ahead. You can finish. That kind of goes back to the question I tried to start with. I mean, if the immigration judge had said, you know, the petitioner, you know, asks us to, you know, or claims that the risk, you know, combine and compound in some way, and I've considered that, and, you know, even if that is true, they're not enough to create a risk of torture over 50 percent. Is that satisfactory? I think there has to be meaningful consideration, Your Honor. And that's what Rodriguez-Arias said. But what's meaningful consideration? Tell me, maybe I'm just, I don't know what you would, what's meaningful consideration? What would, give me some examples. I think that there has to be more than the single sentence in this case about. So what's the next sentence? If you're the IJ, like, I'm really, the more concrete you can be, the more helpful it would be to me. So the IJ says, first, I've looked at it in the aggregate, and it shows some harm from each possible source of torture. But even when considered cumulatively, the record reflects below a clear probability of being intentionally tortured. What would you want the next? And this is coming after, of course, like several, many, many pages. This is a very long opinion. Analyzing the risks individually, I agree. But the IJ has already explained why each of those is not over 50 percent, and in fact sort of ballparks it and says one isn't even close, two aren't even significant. So what does the next sentence look like? So the next sentence would be looking at how these reasons affect each other. And the IJ never did that here. She looked at these reasons one at a time in silos. The reasons. This is about the reasons and not the sources. The reasons. The fact that he is not simply a thief or a bisexual man or a former member. He's all those things at once. And that is why he is more likely than not to be tortured. And the IJ never did that analysis. She looked at these reasons. Okay. But I thought that was Judge Quattlebaum's question. Had the IJ said, what if the next sentence was or what if the sentence is modified? So it's the record in this case shows some risk of harm from each possible source of torture and for several reasons which when combined might be greater than the sum of the parts. But even when considered cumulatively, I just don't see it. Is that enough? She did not do an analysis that substantively engaged with the meat of what these reasons looked like in terms of the actual threats and in particular the fact that the gang is already considering the sum of Mr. Kerr's identities and why they want to target and have already tried multiple times to shoot him and threatened him repeatedly, saying these combined reasons in the same breath, batty man, you're a thief, you're dead. But that's exactly what the IJ said, that for those two reasons, the gang was after him in America and she did not find any significant possibility that that would pose a threat in Jamaica. She did that analysis of looking at it in America, but the question is whether in Jamaica, Mr. Kerr will have a more likely than not chance of torture. And because she did not do that analysis in connecting to what had happened in Jamaica, as Dr. Blake's report states, directly bears on how he will be treated in this very small country where the gang is very well connected with the Jamaican government and police, it was not a meaningful analysis of how those risks will occur in the real world. And that's the purpose of CAT. That's the purpose of the implementing regulations, as this court repeatedly said in Rodriguez-Arias and in Ibarra. Thank you very much. I think you've got time on rebuttal. Thank you. Good morning, Your Honors. Can you hear me now? Good morning, Your Honors. May it please the Court, lease us mercy of the Office of Immigration and Litigation for the respondent. This petition for review should be none-eyed. Mr. Kerr primarily argues that the agency failed to consider in aggregate the sources of torture that he alleged he faces if removed to Jamaica. However, the agency's decisions here clearly acknowledge all of his assertive sources of torture, his former gang, the Shower Posse, other Jamaican gangs, civilians in Jamaica, and Jamaican authorities, as well as the various reasons that he's put forward he may be targeted, his former actions with the gang, his sexual orientation, his status as a deportee, and his former gang membership. So, counsel, if I could just interrupt you. I'm sorry to do it so early. But I think it's fair to say that whether certain things may have been left out or not, the agency talked about many of the risks, and then it said, I considered them in the aggregate. But we have an argument here that, you know, just for direct explanation, it's like two plus two equals six or something like that. And that wasn't addressed specifically. Is it your position that the aggregate statement, just the one sentence, is enough, or is it your position that that doesn't have to be addressed at all? I'm sorry. Can you clarify what you mean by not addressed at all? Yeah, I'm just trying to think or trying to see the government's position. Does it not have to address this compounding issue, this compounding argument of characteristics? Or is it your position that just by saying, I've considered them in the aggregate, that it has considered it? Well, Your Honor, I think there are two parts to my answer in there. First of all, in terms of the aggregation, in terms of what the agency did here in considering in the aggregate, I think this Court has made clear in Ibarra-Chavez that there's nothing in the regulations, agency guidance, that directs the agency to employ any specific methodology when considering and aggregating the likelihood of risk. So here the question really is, did the board and the IJ consider all of the evidence? That's what's required under the regulations, and they did. What the petitioner is essentially arguing is almost two sides of the coin. Did they consider all of the sources of torture? Yes. Did they consider all of the possible sources of risk? Yes, the agency did. And after you reach the conclusion that the agency properly considered all of those things in the aggregate, the second question is whether or not the substantial evidence supports the agency's decision here, and substantial evidence does support that decision. There's nothing in the evidence that the petitioner cites in their brief. There's absolutely no portion of the record that would compel reversal of the agency's decision here. The agency looked at all of the evidence. The IJ went through every single one. I mean, not every single one, but they certainly considered it. The IJ considered all of these claims of the petitioner and reached a conclusion on that basis. And after that, the question is, does the record compel reversal of that conclusion? So that's my first answer to that. I think the second part of that question is whether or not those two sentences are enough. And the respondent would say yes. I mean, that is Ibarra-Chavez specifically contemplated that. When they say there's nothing in the regulations that the agency employ any specific methodology, that they have to put forth that they considered it in aggregate. And the cases that Ibarra-Chavez cites in that are illustrated above this. They cite Errejeta-Martinez v. Garland, holding that even though the BIA did not make it perfectly clear that it was performing the aggregate analysis, on balance the BIA said enough to convince the court that it did in fact find that there's less than a 50% chance that the petitioner will be tortured  And they also cited Hassan v. Rosen in the Eighth Circuit, which held that a separate or lengthy aggregation analysis is not required. It is enough that the record indicates the IJ and BIA considered the risk of torture in the aggregate. I mean, this is essentially... Can I just ask a question about this? And I do appreciate that those cases say that, and we relied on them, and that Ibarra made really clear that we're not talking about an equation or anything, and there's no particular methodology. On the other hand, we do have to review not only the individual risk assessments, but also the aggregation assessment for substantial evidence. And I do find that it's sort of challenging to do that when the IJ hasn't explained her thinking at all. I totally understand from this very thorough opinion why the IJ believed that as to each source, and I think looking at all the relevant reasons, each source didn't add up to a likelihood. But I just have no idea how to review that last sentence saying, and also they don't add up to more than 50% when I add it all together. How do I review that? Well, Your Honor, I think one of the ways to think about it is in the context of the regulation, the language of the regulation where it says more likely than not. So the IJ here is going through each of the, whether he had gone through it in terms of reasons or he had gone through it in terms of sources of risk, he's going through each of these separately, which the board and this court has said separately or in aggregate. So he's going through them separately, or she I think here, but they're going through it separately. The agency is going through it separately and saying none of these individually would satisfy that standard, more likely than not. And they get to the end and they're saying, okay, if you look back at everything I just said, does that add up to more likely than not? And so you're looking back at the findings of the IJ here. So should I go back and try to put enough, I mean, should I try, in looking at the findings of the IJ sort of ballpark, like, oh, the IJ seems like the IJ thought maybe 30% for that one. I just don't know, without doing that, I don't know how to figure out whether they add up to more than 50%. I thought the IJ here gave us at least some clues because there were some sort of ballpark estimates. There was one where the IJ says, like, basically this isn't even close, well below 50%, a couple where the IJ said it's not even significant, minimal. So maybe you can look, am I supposed to look for context clues like that? I just really don't understand concretely how to review the aggregation finding if the IJ doesn't explain it. Well, I believe that the IJ does explain it, though. I mean, when it goes through it separately and then it says in aggregate that that also does not add up to more likely than not. I mean, there's no difference between what the board in IJ necessarily did here and what the board in IJ did in Baruch Havas, which was, it's a slightly different analysis there. It was sort of a chain of events analysis where they said, like, you know, these events separately would not add up to more likely than not. And then at the end they say, in aggregate, this is not more likely than not. And so very similarly here, what the IJ is saying, I've looked at all of these instances, and if you look at them in total, it's more likely than not. So maybe to follow up, I mean, is the argument we're dealing with, the kind of whole person argument, really an aggregation question? Because what we've really been talking about in other cases is where an agency didn't consider one of the factors. And we've said, no, you can't just pick out some of them. You have to consider all of them. And under that sort of analysis, the district, I mean, not the district court, but the agency probably does that. But there's this additional argument that, you know, together the sum is greater than the whole of the parts, which I'm trying to figure out, is that really an aggregation argument, or is it just another argument or another piece of evidence? I don't know if that's a distinction or that a difference, but it just seems like we're talking about something different than we've talked about in our other cases. And I'm trying to figure out how to characterize it to see, you know, I don't know if the standard review is any different or anything. I don't know if that's kind of more of a comment and wonder. Do you have any response to that to help me? Your Honor, as I understand Petitioner's argument, he has two sort of arguments. He's arguing that the aggregation analysis was incorrect here, which the respondent disagrees with, obviously. But then he's also arguing what I believe is an evidentiary argument, saying that the agency did not look at all of this evidence regarding risk sources, whatever is before the agency, and that they did not correctly analyze that. And here I believe the board addressed what Your Honor is talking about, saying that the agency addressed it as he presented it. That he said, I am a former gang member. I had problems with my gangs where I stole from them. I am an LGBT person. And he put forth all of these claims, and he sort of laid out that he would be at risk because of these from these sources in different ways. And that's how the board said that the agency analyzed it here. Because he never, for example, he might be at risk from the, I'm sorry, I would have to look back, but I think the example that the board uses is that he would be, I'm not going to find the exact language, but the example that the board uses, I believe, is that he would be at risk from the Jamaican civilian population as an LGBT and a deportee possibly, but he wouldn't necessarily be at risk from other Jamaican gangs as a deportee. So that's the way that the IJ analyzed this evidence and looked at the evidence in that way. From how I understand Petitioner's argument, he's saying that somehow that the agency didn't look at all of these factors cumulatively, but the respondent would say that if looking at the agency decision, it's just flip sides of the coin on how they analyze this. They're looking at the sources, they're looking at the reasons, and even though they're organized by sources, they're certainly looking at the reasons as well. So he doesn't end up by saying that somehow that they're not looking at everything is simply incorrect. And there's nothing in the evidence that would compel any reversal of the agency decision here. I think that's the most significant point here, that the Petitioner has the burden of proof under the Convention Against Torture to establish that he's more likely than not to be tortured in Jamaica, and he simply cannot point to any evidence that says that this somehow, all of the reasons that he's putting forth, if you want to put it that way, the reasons, the sort of compound structure that he's put forth as being his identity, puts him more likely than not at risk. And the agency did consider that. What about the IJ's statement, counsel, that the gang may have a problem with Kerr's sexuality? Now, how is that sufficient to address the likelihood of torturing Kerr based on his sexual orientation, coming from the gang, coming from civilian society, perhaps coming from other gangs? The different evidence that the IJ considered, the IJ just said they may have a problem with his sexuality. Well, that's kind of a very non-substantive statement, isn't it? Well, Your Honor, I think he's saying that, I believe the section that you're looking at is where he says that under the fear of torture by the shower posse, and so as I think was previously discussed during Petitioner's argument, the IJ acknowledges that with his history of the shower posse in the U.S., that some of the shower posse members in the U.S. may have had a problem with him as he defied the gang in some way, whether if he stole from the gang, his relationship, his LGBT relationship, or for other unknown reasons, but that that didn't translate into Jamaica. And then the IJ looks at fear of torture from other Jamaican gangs and looks at whether or not that would be sufficient to show a risk of torture. And then he also looks at the treatment, society's treatment of the LGBT community as troubling, and this is something that the Board acknowledges as well. So looking at all of that in aggregate, looking at the risk of torture on the basis of his LGBT status, his former gang status, the fact he stole from the shower posse gang, the IJ is still saying that is not enough to show a risk here, that it's more likely than not he would be tortured. I mean, as the Board and the IJ says, Jamaica in general does not have a good record with LGBT status people. However, is there anything in this record that tips that into more likely than not? And the question before the Court is, does the record compel reversal on that basis? And the petitioner doesn't point to anything here that would compel reversal that the Board and the IJ didn't look at. I mean, that is essentially what Ibarra-Chavez goes to when they're saying that when they cited Erjeta Martinez, which also, just for the record, it also cited Ming Dai, where it's saying that the question of substantial evidence here, again, is that the record compels. A review in court may not overturn the agency's factual determination unless there's compelling evidence. And there's no compelling evidence that the petitioner here has presented that the agency necessarily erred, or the agency erred in its factual findings here, or that they erred in their analysis and aggregate. So to the extent that Mr. Kerr argues that the agency did not consider certain risks of torture or evidence in the record, this is refuted by the immigration judges and Board's reasoning. The record doesn't compel the reversal of the agency's conclusion that Mr. Kerr failed to establish eligibility for protection under the Convention Against Torture, and for these reasons the court should deny the petition. Counsel, I'm sorry. You were just concluding, but I want to ‑‑ I'm still wrestling with this. Just assume hypothetically that I think when I look at the IJ's opinion that substantial evidence supports sort of the four preliminary, what I think of as four kind of preliminary findings, that from each of these sources, potential sources of torture, and for the reasons as presented by the petitioner, you don't get over 50%. But I'm still trying to figure out how I know whether there is substantial evidence to support the further finding that even when you add them up, you're not over 50%. And so let me ask you, what if the IJ had said as to each of the first four, like, boy, it's really close, but I'm putting it at like 49% for each of them, and then said, and also in the aggregate, it's not over 50%. What would I do then? Well, Your Honor, first of all, I think the government dispute putting each of them at 49%. No, no, this is a hypothetical. That is not what the IJ said here. The IJ was very clear that she thought it was well below 50% on the first one and that the others seemed to her to be quite minimal, or at least one of them did. But I guess I'm trying to get at how are we supposed to review that last finding other than by, I guess, going back ourselves and trying to figure out, I don't know, how likely is each one of these? If we don't do that, how can we review the question of whether added together it gets you over 50%? Well, again, Your Honor, first of all, I think as this court explained in Ibarra, the statistical model doesn't necessarily work because you can't necessarily look at each of those separate individual claims or each of those individual sources and say it adds up to 50%. So in some ways what the IJ is saying when they're looking at it separately is they're saying, would this particular one, would this say more likely than not? And if that does, then they've shown separately one source would show more likely than not, and that would fulfill his burden. But then when they're saying that I've looked at it all in aggregate, they've looked at their former findings and they said that looking at all of these findings together, this still doesn't sustain the burden of more likely than not. But to follow up on that a little bit, if the nature of the opinion in going at them issue by issue didn't give us context that, hey, these might be near 50% or more. I mean, it sounds like what you're suggesting is, you know, we read the opinion. We read how the immigration judge and the board talked about the various arguments. And in light of how they do it, it's, you know, we can look back at the statement about the aggregate is not more than 50% too. In this case, that might be hypothetically easier to do than if someone, you know, had talked about the way Judge Harris said that, oh, this one issue might by itself almost put you over the top, but I find it's not quite there. Then there's, like, maybe an internal conflict. So I guess my question is do we just look at the opinion as a whole and see if what is said about the individual pieces kind of matches up with what's said about the aggregate analysis? Well, Your Honor, I think it's a combination of both looking at the question of did the agency do the aggregation analysis correctly? That's the first question here. And, like, did they cite the correct law? Did they look at the aggregation? Then, as Your Honor, as I think I said- So I'm sorry, counsel, I want you to finish. But so I just want to, you said did the agency do it correctly? But what you mean is did they do it? Yeah. Like, okay. So did the agency do the aggregation analysis? And here they did. They cited Rodriguez or Arias, and they said, you know, we are looking at this in aggregate. We've looked at all of these facts, and we've done it. After that, the question is substantial evidence. The evidence is, is there anything in the record that would compel reversal of the IJ's decision that it's more likely than not that this person would be tortured in Jamaica? And that's the second question for the court. And here there's nothing in the agency's analysis that would reverse on the substantial evidence standard. Thank you very much. Thank you, Your Honor. Your Honors, the analysis that we are seeking doesn't require any kind of mathematical methodology or statistical approach. If instead, for example, Mr. Carr had only been bisexual or a thief, there would have theoretically been X level of risk. But that's not the case here. Because he's both of those things, those risks are compounded, just like the gang compounded these reasons in threatening him. And that is not what is in the IJ's analysis. It's missing here. How those compounded effects of his identity are real-world risk. The gang is already doing that analysis in threatening him for all those things at once. So in order to reflect what the actual risks would be to Mr. Carr in Jamaica, the analysis that the IJ does needs to reflect that. And that's consistent with Rodriguez-Arias and Ibarra-Chavez in saying that all sources of risk must be considered. And this court said in Rodriguez-Arias that failure to aggregate all sources of risk is a legal error that's subject to de novo review. And that's... Can you just tell me where specifically, under which sources, did the IJ fail to consider all of the relevant characteristics? Yes, Your Honor. Under the, in particular, the threat from the shower posse based on his sexuality, as well as from other Jamaican gangs based on his sexuality, and from the Jamaican civilian population as a former gang member. And those reasons were not discussed at all in any kind of... So, I mean, this may go back to Judge Quattlebaum's question. I'm just struggling with this argument about, like, taking the person as a whole and the compounding, cumulative nature of the reasons. It really comes... What you're really saying, right, or are these two separate arguments somehow that I'm missing? It seems like what you're really saying is I can go through the IJ's opinion and under each heading, fear of torture by Jamaican gangs, fear of torture by civilians, and fear of torture by the shower posse gang. You're just saying there's some evidence that the IJ didn't look at here. So we have made an argument about ignoring and misconstruing evidence, but we've also made an interrelated but different argument on aggregation. Okay, how are they different? I don't understand how they're different. So within the aggregation argument, there are two problems here. First, the IJ did not really discuss at all in any kind of meaningful way those reasons that I've described, his sexuality from the shower posse and other Jamaican gangs and from the Jamaican civilian population and police based on being a former gang member. And also she failed to discuss how these reasons compound each risk from each entity. And that has an impact on the final conclusion that she reached and makes it not able to. All right, if she doesn't consider them, then she doesn't aggregate them either. I guess I'm just maybe they're different arguments, but they seem like the argument that they weren't considered at all sort of subsumes the argument that also she didn't do it in the aggregate. Well, she can't compound them if she doesn't consider certain things. That's what I'm saying, right. So they are interrelated. However, the failure to consider the cumulative effect, I think, really bears on. Are they more than interrelated? What if I thought just hypothetically that when it comes to, say, the Jamaican population, the part where the IJ talks about how deportees are often shunned as undesirable criminals, that sort of covers the gang thing. Like the reason they don't like deportees is because they are often gang members. So if I think that the IJ did consider that in looking at fear of torture by civilians in Jamaica, then I probably also think that the IJ aggregated it when the IJ said, when I look at all of this in the aggregate, I'm still coming out the same way. Or do you think even if it was considered, it needed to be specifically mentioned over on the aggregation side? So in terms of the legal analysis required for aggregation, I think there has to be a discussion of what those risks will really look like. And that transcends simply what the evidence is and how that's interpreted only in discussing each piece of evidence or another. I think it's really about engaging with the risks as they will actually occur. And the evidence is certainly part of that. But all of these evidentiary factors do bear on what the real risk will be to Mr. Kerr. And by failing to actually discuss, she discussed each of these risks, each reason in a separate subsection in each entity. And that is breaking things down into these silos. But if she didn't do that, if she had just said, look, I've looked at everything. And in the aggregate, it's not over 50%. And I mean this with full respect. I assume you would be here saying, how can we review that? She needs to go through it and explain to us how she calculated each risk, right? She does need to do that analysis. And just having one sentence at the end saying, I've aggregated everything, is not consistent with providing a meaningful basis for review of the agency's decision. And so that's why the decisions that the IJ and the Board provided in this case are not legally sufficient in terms of doing that aggregation analysis in a meaningful way. Thank you very much. Thank you. We are sorry that we cannot come down and shake hands as we normally would. But we very much appreciate you being here today. And thank you for your assistance with this case.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan